Good morning. May it please the court, my name is Stacey Tolchin and I'm here on behalf of Petitioner Morales de Soto. I would like to reserve five minutes of my time for rebuttal. Petitioner is married to a United States citizen and has three United States citizen children ages 12, 10, and 7. She was issued an expedited removal order in 2000 when she was just 21 years old and she has resided in the U.S. since she immediately came back now for more than 16 years. She has no criminal history and despite now having been issued two orders of removal she has never appeared before an immigration judge or had the right to under the statute. She has substantial equities in her case but has never been able to submit them before a judge. Now in 2009 Petitioner was issued an order of reinstatement of removal by DHS and that is what she challenges today before this court. The court's decision in via unguiano makes clear that the court has jurisdiction to review the reinstatement order and she presents that now. And the court should grant this petition for review for four reasons. First, the 2009 reinstatement order was issued prematurely. Petitioner's application for adjustment of status and her I-212 waiver were denied on... She had no basis for adjustment and reinstatement at that point, did she? She did at that point. But today? But today the law has changed. So what difference does it make? Well, it makes a difference and here's why. She did file an appeal. The law makes clear that just having a legal proceeding doesn't give you a right to stay in the country. It's not an automatic stay of removal. No, of course not, Your Honor, but it's relevant to the amount of time. She had nine and a half years at the time of the reinstatement order. She filed an appeal. At the ten year mark, she's eligible for cancellation of removal. And so at that point, had she been put into proceedings before a judge, she could have applied for a waiver. And so it's really important when the DHS is considering discretion, whether it considers to put her in proceedings or to issue a reinstatement, is she eligible for relief from removal? Again, with the U.S. Citizen kids and the U.S. Citizen spouse, at that ten year mark, it's very, very important. And so that's why there's prejudice. Could she file an application for adjustment before she got permission to reapply? So I understand she filed them at the same time, but I thought one was a prerequisite for the other. Normally you file them concurrently. But don't they, are they adjudicated concurrently or does she need to get the permission to reapply for admission before the adjustment of status application can be adjudicated? No. So the typical process is you file the visa petition first or if you're married to a U.S. Citizen, you can file them all together. So the visa petition, the adjustment application and the waiver. And could an adjustment application be adjudicated before the Attorney General granted permission to reapply for admission? Well, by law it would be denied. That's the Padilla case, which is 334-Fed-3-921. So if, and again the law is all different after Duran-Gonzalez, but at that time if the adjustment was filed without an I-212, then the adjustment would be denied. Now in this case what happened was she went to the interview, she didn't understand that she had been ordered, deported because she never saw a judge. So she learned at the adjustment interview that she had been deported and then her attorney filed the I-212 waiver. How do you mean she never knew she'd been deported? Because for somebody who's 21 years old who goes to the border and is given a document in English that she doesn't understand, she didn't understand that she was ordered, deported. She knew she'd been turned away. She knew she'd be turned away, but... She knew that from the country. Sure, but before... The fact she hadn't seen a judge didn't change that fact. Well obviously by law, Your Honor, it's a removal order, there's no question. But as far as her knowledge... But she knew that. She may not have known the legal implications of it, but she knew she had been turned away. Sure, but it's just only significant in that that's why the I-212 wasn't filed with the adjustment application. And the irony being, had she done that, she would have been a Duran-Gonzalez class member. Unfortunately, since she didn't know, just as actual knowledge, that she had been deported, the I-212 wasn't filed until after Duran-Gonzalez came down in 2007. And so after Duran-Gonzalez, she was, according to the Carts case law, on notice of the change in law and the I-212 was too late. So what should have happened is that she should have filed it with the adjustment and then she would have been in the Duran-Gonzalez class and would be eligible for adjustment of status. So just to go back to the administrative appeal issue, the court's decision in Paris-Gonzalez versus Ashcroft from 2004 made clear that a reinstatement order couldn't be issued if the I-212 was pending. And the court's decision in Ahmed versus Holder, which is 569-Fed3-1009, there says that there can't be a removal order entered until the administrative appeal is exhausted. The other thing that's important... So the regulation... so help me just... this is what I was trying to put together. So it says, the regulation says the immigration officer may not reinstate the prior order in occurrence with the section unless and until a final decision to deny the application for adjustment has been made. Are you relying on that or are you relying on case law to say there was an error? I'm relying on Paris-Gonzalez, which is the case law. So you're not relying on the regulation? And the regulation, which... so Paris-Gonzalez cites to 212.2. That's the regulation. And 212.2H says there's an appeal as of right that has to be filed within 30 days. And so then... so basically, I'm combining the regulation with Paris-Gonzalez. Right, but the appeal is for the application for adjustment, right? No, you can't appeal an adjustment application. Okay, you can't appeal the adjustment. It's just for the waiver. So the... so she filed an application for permission to reapply for admission. Yes. So is that what you're saying can be appealed? I thought that it was the application itself. No, you're correct. It's the application for the waiver, what we call the Form I-212, the application for permission to apply. And that was in 2008, which again was after the Duran-Gonzalez decision. But the portion of Paris-Gonzalez that says that there can't be a reinstatement order until the I-212 is decided, that part is still good law even after Duran-Gonzalez. Now in addition, while this case was pending, the Morton Memo came out, and I'm sure you're familiar with the Morton Memo from 2011. Could you go back and maybe talk a little slower and just walk me through procedurally what happened? So she filed an application to adjust status, right, and an I-212 application for permission to reapply for admission, and an application to waive inadmissibility. Am I right? Correct, Your Honor. Okay. And this was after Torres-Garcia, so we say that she was on notice that there was some question about Paris-Gonzalez's interpretation of the regulation. Right. She actually filed after Duran. She filed in 2008. She filed in 2008. The adjustment is in 07 before, but yeah. Okay. And Duran-Gonzalez was decided in November 2007, so she applied after that. And then the agency denied her application for permission to reapply for admission. Isn't that right? Correct. That was in June of 2009. That's correct. Okay. And so then, and she was inadmissible under, because she was an alien who was already removed and reentered. Correct. So that was denied at that point. And so you're saying she had time to appeal the denial of her I-212 waiver, is that correct? Yes, Your Honor. Okay. And then, but at that time, there were no policy memos, so there was no basis to appeal on the basis of policy memos that were issued years later. Is that right? Do you mean on prosecutorial discretion? Or on prosecutorial discretion? Right. The policy changed. Those were issued years later. Okay. So then you're arguing that the reinstatement order that was issued by the agency to reinstate her removal order was filed before the time to appeal the denial of her I-212 waiver. Is that right? Correct. Okay. And so what was that a violation of? Was that a violation, what regulation was that a violation of? It's 212.2H, which is the right to appeal the I-212. And then the 103.3... So you're saying 1182? No, no, no, no. The regulation. So 8 CFR. You're saying the regulation. Mm-hmm. To 12.2H. Okay. So... And then there's also 8 CFR 103.3A2I. Got it. Thank you. And just to follow up on the timeline, so she was denied on 6-2409. The reinstatement was issued 7-909. And the deadline to file the appeal was 7-27. She actually filed it on 7-2409. What exactly are you looking for here as relief and as a remedy? We're looking for a remand back to the Department of Homeland Security to consider the prosecutorial discretion. But they can consider it without a remand. They can consider it. So why do we remand for something they could do already? Because here's the problem, Your Honor. When they do that now, and that's what happened here, they just say denied. And so we're dealing with different offices of DHS. This is the Bakersfield office. We don't know if they deny because they don't believe they have discretion because they believe reinstatement is mandatory, or we don't know if they denied because they don't believe discretion is warranted. There was a companion case that was set for today, Hortez Lopez v. Lynch, where exactly that happened, where they did cancel the reinstatement order and issued a notice to appear. That happened. That was the Los Angeles office. These offices are all different. And so when you're dealing with them on the ground, and specifically in this case, I've been in the case from day one, she had an infant when she was arrested and detained. I tried to talk them out of it. And they told me it was mandatory. I mean, none of that's in the record, and I understand. But the point is that we really want them to go back, look at the Morton memo, consider the equities in the case. She's been here 16 years. She has no criminal history. And to consider whether prosecutorial – She's never had lawful status during that whole time. That's correct, Your Honor. And she's aware of that. Yeah, she is. Yeah. And I'll reserve my remaining time if that's okay. Thank you. Good morning, Your Honors. May it please the Court. Lindsay Murphy on behalf of the Attorney General. Your Honors, Congress has strictly limited what process is due to a petitioner who is subject to a reinstated order of removal. Here, the Court's scope of review in any reinstatement case is limited to three factual predicates, none of which the petitioner challenges here. Instead, she mounts an unreviewed petition and a reviewable challenge to ICE's discretionary determination to reinstate her prior removal order rather than issue a notice to appear in her case. Nothing in the INA or the regulations entitles judicial review of ICE's discretionary determination, and the Court should deny the petition. Is it a discretionary determination? Has there been a discretionary determination here? Yes, Your Honor. Or has that manifested? Well, as an officer of the Court, I'm here to assure you that there has been a discretionary determination, and in fact, ICE has been, at each stage of the process, has looked at this case. As recently as last week, I was in communication with the local ICE office who indicated that they wanted to proceed ahead with reinstatement in this case. Well, how does that work? I mean, is it just somebody says, we exercise our discretion and deny it, or just give me the actuality of it? Well, Your Honor, the agency does have the Morton Memo and the more recent November 20, 2014, prosecutorial discretion memos, which they refer to. They also have a very good idea of what their actual resources are in that office and how the resources... Does that say we considered the Morton Memo and we decided, considering all of these factors, everything else that we exercise our discretion, we'll deny the application? I mean, what exactly do they say or do? They don't necessarily state so explicitly. But what they do, and generally what occurs in my office is the oil attorney will confer, will contact the ICE office, make sure that they're aware... They simply say, you know, we exercise our discretion because, and put some language there to give some context to the exercise of their discretion? I mean, I suppose that they could do so, Your Honor, but the problem is that this is not an isolated case. There are many, many reinstatement cases that the government issues each year. And to require the agency to issue a formal written... It seems like it takes much to do that. I mean, it's one thing to just say deny, deny, deny. It's another thing to say why. I mean, it doesn't take much to do that. Can't the court review exercises of prosecutorial discretion when they're in a programmatic form, such as these memos suggest? No, Your Honor. Can we be able to review and see whether the prosecutor's discretion meets the standards that have been set out? No, Your Honor. In fact... Why is that? This court and the Supreme Court have consistently held that the exercise of prosecutorial discretion by an enforcement agency is not one that is particularly amenable to judicial review. It would certainly have an enormous chilling effect on the agency's ability to conduct its review of its own resources and how it wants to proceed forward in a particular case. And particularly with ICE, if it was required to issue a written decision in every reinstatement case, that would be an enormous burden on an already overburdened agency, Your Honor. Additionally, there are no standards or really guidance in the regulations or the INA for this court to apply in reviewing such a determination. But you say that the standard is discretion, that they have to exercise a discretion. They just can't categorically say denied, right? Correct. See, that's what pulses me a little bit. I mean, these are sort of empty words, and there's no substance to what you're saying. I just don't quite understand the logic to it at all. Well, the logic is that ICE does have all of these equities of the petitioner that Ms. Tolchin had expressed to the court. They do have these in mind. And in fact, I and counsel who drafted the brief ensured that ICE was aware of these equities. But it's ultimately ICE's determination to decide whether or not these equities outweigh its decision on how it wants to use its resources. Let me go back to the law for a minute. So is the petitioner correct that the agency was wrong in reinstating her order before allowing her time to appeal? No, Your Honor, and there's nothing in the INA or the regulations or case law that supports the position that ICE prematurely reinstated her order. ICE acted within the bounds of the regulations for reinstatement. So she has a right to appeal the denial. Is there anything that requires the reinstatement order not to be issued while she's appealing the denial of the form? No, Your Honor, there isn't. The only case law that she cites to is Ahmed v. Holder, I believe. And that case really doesn't apply here. It's a continuance case. It's a continuance before an immigration judge. So could she pursue her case from outside the country? She could pursue her case from outside the country, Your Honor. With respect to the waiver denial, I think that's all said and done, and the petitioner has conceded that she's not eligible. But she did have an opportunity to appeal. That appeal was fully adjudicated, and there's really no reason here to remand the case. So that appeal was adjudicated and denied? Yes, Your Honor. And there really is no reason here to remand the case for a consideration of prosecutorial discretion, where, as Judge Clifton indicated, ICE can do that while these proceedings are pending. And if the Court has no further questions, we'll submit. Thank you very much. Thank you. Your rebuttal. Thank you. Just to clarify, the appeal wasn't adjudicated. At least, we didn't get a decision. I do understand that after the Carrillo de Palacios decision, it couldn't be granted, but there was no actual decision that was issued. Going back to the Ahmed decision, the crux of the Ahmed case was that the petitioner had an administrative appeal pending and was ordered removed by the judge, and he appealed that to the Board, which went to this Court. He had requested a continuance, and that was denied. But the removal order was vacated because there was no continuance granted because the administrative appeal was pending. Is opposing counsel correct that there's no rule that precludes reinstating the prior order while your appeal is pending for the Form I-212 waiver? Your Honor, I think that it's incorrect because of Perez-Gonzalez. Perez-Gonzalez... There's no regulation that was violated, so you're saying the import of Perez-Gonzalez. Plus the regulation that says you have a right to appeal. You have a right to appeal, but that doesn't say that you have a right not to have a reinstatement order issued, especially if you could pursue the appeal from outside the country. Do you disagree that you could pursue the appeal from outside the country? Right. So if she leaves, she's barred for, at this point, at least 10 years, likely 20. So she can't even seek a waiver. You can pursue an administrative appeal to the AAO outside the U.S., but by departing, she triggers an additional bar. So if she leaves, she's out for a minimum of 10 years, potentially 20. She's got two removal orders now, so she's likely out for at least 20 years. So that's not really an option given her... I mean, she's got these young kids. The last thing, just on the issue of discretion, I wanted to mention to the Court just obviously the general concept that when an agency has discretionary authority, that it has to provide clear reasons for its decision and show that it's reviewed the evidence. I see I'm out of the time, but that's all in the briefing. You've got another minute and 35 seconds. Okay, sorry about that. Do you disagree that this Court cannot review prosecutorial discretion? So opposing counsel says that the Supreme Court has indicated that courts should not review and exercise a prosecutorial discretion. Do you disagree with that? And is there cases supporting? Well, the problem is 1252G of the statute, which is a limitation. What the Court can review is the process. I think if we had a decision here that said, here's all of the equities, U.S. citizens, children, spouse, 16 years, no crimes, but she came in illegally and therefore we deny prosecutorial discretion because the negatives outweigh the positives, that's one thing. And maybe in that situation it wouldn't be reviewable, but that's not what we have... I'm not saying there has to be some sort of reason. We don't review it, but at least the process, you know, is something that has to be established. Exactly, Your Honor. The Supreme Court's case in NLRB v. Metro Life, which is from 1965, just generally states that when an agency is afforded discretion by Congress, it must disclose the basis of its order and give a clear indication that it has exercised the discretion which was intended. And that's exactly what we're asking here. And I understand... I don't see any discretion here. Well, I mean, that's the issue now. It's the Supreme Court, Your Honor. Obviously Congress doesn't think it is. But there is, you know, there's discretion at every step of the way. That's what the Morton Memo is about. So at every step of the way... And so do you invite a process where why the court is going to have presented to it the question of whether or not the agency properly exercises discretion, when the whole point of giving it discretion in the first place is to keep the authority within the agency, not giving it over to the court. Right, but that's... And I find that perverse. But that's what we do with... That's what you do with the board also, right? The board has that discretion. You just need to make sure... Well, if they make the discretionary decision, for example, that there's not extraordinary hardship in a cancellation of removal case, there's nothing more for us to say or do. Right, but if they didn't review the evidence or they violated the law, then there is, because that comes within 8 U.S.C. 1252 A.2.D., right, for a legal and constitutional claim. So the court can review the process, just not the discretionary decision. And that's, again, what we're asking here. Okay, thank you. I thank both counsel for your helpful arguments. The case just argued is submitted.
judges: Clifton, Ikuta, Block